**Nettie Milano et al., Associated as L. Klein Employes' Savings and Loan Association, Plaintiffs in Error, v. Sheridan Trust and Savings Bank, Defendant in Error.**

### Gen. No. 30,803.

1. BANKS—*duty of bank accepting check drawn to its order and presented by third person.* It is the duty of a bank, upon accepting a check drawn to its order by one who is not indebted

to it and with whom it has no account, to hold the proceeds subject to the order of the maker.

2. BANKS—*liability to maker of check drawn to its order and paid to third person presenting same.* Where a bank, upon accepting a check drawn to its order by one who is not indebted to it and with whom it has no account, credits the proceeds thereof to the account of the person presenting it without taking any precautions to determine the authority of such person to receive the same, it will be liable to the maker for its negligent failure to hold the proceeds of the instrument subject to the order of the maker.

3. NEGOTIABLE INSTRUMENTS—*bank paying to third person proceeds of check drawn to order of bank by one with whom it has no account as holder in due course under Cahill's St. ch. 98, ¶ 42.* A bank which accepts a check drawn to its order by one not indebted to it and with whom it has no account, and without inquiry pays the proceeds into the account of the person who presented the instrument, is not a holder in due course within Cahill's St. ch. 98, ¶ 42, not having taken the instrument in good faith.

Error by plaintiffs to the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1926. Reversed and judgment here against defendant for $2,652.18. Opinion filed November 29, 1926.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON for plaintiffs in error; HENRY S. MOSER, of counsel.

MONTGOMERY, HART & SMITH, for defendant in error; IRVING HERRIOTT and VICTOR C. MILLIKEN, of counsel.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

Plaintiffs sought to recover $2,250 with interest and upon trial by the court, upon stipulated facts, had judgment for $7.74, from which they appeal, claiming that under the facts and law they are entitled to the entire amount claimed in their declaration.

Plaintiffs are employees of L. Klein & Company, which conduct a department store in Chicago. They are organized in an association known as "L. Klein Employes' Savings and Loan Association." The de-

fendant bank was engaged in the duties usual and incident to banking in Chicago.

On August 26, 1922, and for six months prior thereto one Sidney Owen Tresidder was a customer and depositor of the bank, maintaining an account in which he deposited funds and from which he withdrew funds from time to time by means of checks. Tresidder was an employee of L. Klein & Company, which fact was known to the bank on August 26, 1922. He was also the bookkeeper and auditor of the association from December 28, 1919, to April 28, 1923, but his connection with the association was unknown to the bank.

On August 26, 1922, and for a long time prior thereto, the association carried an account with the West Side Trust & Savings Bank. On that date the association drew its check upon this bank, payable to the order of the Sheridan Trust & Savings Bank, the defendant, for $750, which was signed "L. Klein Employes' Savings & Loan Ass'n. Leo Friedman, Pres. Anna Medofsky, Sec'y." This check was given to Tresidder with instructions to purchase certain bonds therewith from the defendant bank for said association, the name of the defendant as the party from whom to purchase said bonds being suggested to the association by Tresidder. On the same day, August 26, 1922, Tresidder mailed the check to the defendant bank, which was received by it on August 28, accompanied by a letter saying, "Please credit my a/c with enclosed check & oblige." With this letter and check was a deposit slip filled out in the handwriting of Tresidder, directing the bank to credit the amount of said check to his account. Upon receipt of this the defendant bank credited the amount to Tresidder's account, indorsed the check "Credit a/c of Sidney Owen Tresidder," and in due course collected the proceeds through the clearing house from the West Side Trust & Savings Bank.

No bonds were purchased by Tresidder from the bank or any other person, in accordance with the instructions given him upon delivery of the check to him. The bank did not hold the proceeds of said check after collecting the same for the association, nor did the bank deliver or give anything of value to the association for said check. At the time this check was received the association was not a customer or a depositor of the bank, and it had had no dealings with said bank.

January 23, 1923, another check, this time for $1,500, was drawn by the association, payable to the defendant bank and delivered to Tresidder by the association with instructions to purchase bonds from the defendant bank. This second check was also mailed by Tresidder to the bank with a deposit slip and his account was credited with $1,500. The defendant bank in due course collected the proceeds of this check from the drawee bank.

At the time these checks and deposit slips were received by the bank from Tresidder, the bank had no notice of any kind that Tresidder was acting as agent of the association and was not entitled to the proceeds of the checks, other than the notice, if any, appearing from the checks themselves. The first notice received by the bank other than the notice, if any, from the checks themselves, that Tresidder was acting as agent of the association and was not entitled to the proceeds of said checks, was on May 2, 1923, when the bank was advised by the attorneys representing the association that Tresidder was not entitled to the proceeds of the checks and that the association was the owner thereof and entitled to the proceeds.

After the deposit of the checks to his account Tresidder continued to be a customer of the bank and from time to time withdrew funds from the account and deposited additional funds therein. Prior to May 2, 1923, he had withdrawn all moneys on deposit in his

366    APPELLATE COURTS OF ILLINOIS.

Milano et al. v. Sheridan Trust and Savings Bank, 242 Ill. App. 362.

account, including the proceeds of said checks, except the sum of $7.74, which on May 14 the bank permitted Tresidder to withdraw. He has made no additional deposits since that date, and at the time of the trial there was no money standing to his credit in said bank.

It was further stipulated that Tresidder was the bookkeeper and auditor of the association, and had full, complete and sole charge, custody and control of all returned checks issued by the association and the checking of the same, and had full charge of the bank books and vouchers and of all the securities purchased by the association; that Tresidder did not disclose to the association that these checks were credited to his personal account by the defendant bank or that he had not purchased bonds for said association with the checks aforesaid, and that the association first discovered that the proceeds of the two checks were deposited to the personal account of Tresidder on May 1, 1923, upon which date it also discovered for the first time that he had not purchased any bonds with said checks. On May 2 the association demanded of the bank that it pay to the association the proceeds of the checks, which was refused.

It was further stipulated that the bank did not at the time of the receipt of the checks, or at any time thereafter or prior thereto, make any inquiry of Tresidder or of the association, or any member thereof, or any other persons whatsoever, as to the authority of said Tresidder to deposit the checks to his personal account in said bank; that Tresidder has converted the proceeds of the checks mentioned to his own use and has not reimbused the association for said checks or for any part or portion thereof.

The trial court held that defendant accepted the checks in due course and gave plaintiffs judgment only for the amount left in Tresidder's account on the date they made the demand on the bank.

We have concluded that, as the checks upon their face showed that they were drawn by the association to the order of the defendant, with which the association had no account and to which it was not indebted, it became the duty of the bank, if it accepted said checks, to collect the proceeds thereof and hold the same subject to the order of the association, and that the bank was negligent in crediting the proceeds of said checks to the personal account of Tresidder.

Among the cases supporting our conclusion is *Kuder v. Greene,* 72 Ark. 504, in which Kuder drew a check on a Kansas bank, payable to the order of Greene, cashier of the Citizens Bank of Harrison, Arkansas. The check was delivered to one Cole with directions to deposit the same with the Citizens Bank for collection for Kuder. Cole presented the check and had the proceeds credited to his personal account and thereafter withdrew the funds. In passing upon the question whether the bank was a bona fide holder of the check for value and as such entitled to be protected against the equities of Kuder, it was held that making the check payable to the order of the cashier was contrary to the usual custom, where checks were intended for the benefit of a third party, and when Cole presented the check the circumstances were such that the bank must be held to have had notice that Kuder, the drawer, had an interest in the check and had not authorized Cole to collect it.

A somewhat similar case is *Bjorgo v. First Nat. Bank of Emmons,* 127 Minn. 105. The plaintiff purchased a draft from an Iowa bank, payable to the order of the First National Bank of Emmons. He delivered it to one Haugan upon the understanding that until title to certain land had been acquired the money should be deposited in the Emmons bank. Haugan cashed the draft and appropriated the proceeds. Although the face of the draft did not disclose plaintiff's interest, yet it was held that the fact that the

Milano et al. v. Sheridan Trust and Savings Bank, 242 Ill. App. 362.

draft was payable to the bank instead of to Haugan, who presented it, was so out of the ordinary mode of doing business that it placed a duty on the bank to take some precautions before paying out the money.

In *Sims v. United States Trust Co. of New York*, 103 N. Y. 472, it was held that the check on its face imported the ownership of the moneys represented by it to the drawer, and that the use of the defendant's name, a bank, as payee, indicated the drawer's intention to lodge the money in its custody. The court said: "The check, by its terms, authorized the defendant (a bank) to withdraw from the People's bank a certain sum for a purpose not disclosed, but fairly inferable from the nature of the defendant's business. * * * It was bound to keep Dr. Sims' (the drawer) moneys, until it received his directions to pay them out."

Under similar circumstances the bank was held liable in *Bristol Knife Co. v. First Nat. Bank*, 41 Conn. 421, which was cited and followed in a later decision, *Graham v. Southington Bank & Trust Co.*, 99 Conn. 494, in which the court held that the checks were not of the same import as checks drawn to "Bearer" or "Cash," nor "do such checks clothe the holder or bearer of them with apparent authority to convert them into cash and take the cash into his own custody"; and that when the holder "presented himself at the defendant's banking house with these checks payable to the defendant's order, and the defendant bank received them, it became custodian of the funds subject to the plaintiff's direction in respect to them"; and if the party presenting the checks "assumed to convey directions from the plaintiff authorizing the defendant to pay over such funds, and the defendant followed such directions, * * * not investigating their truth, it did so at the peril of discovering that the plaintiff never gave such directions, and thereby subjecting itself to liability for the funds misapplied."

Other cases of similar effect are *Lanning v. Trust Co. of America*, 137 App. Div. 722, 122 N. Y. S. 485; *Hathaway v. Delaware County*, 185 N. Y. 368; *First Nat. Bank of Coleman v. First Nat. Bank of Brownwood,* — Tex. —, 278 S. W. 188.

A few decisions from other States are said to hold to the contrary, but they are readily distinguishable from the instant case, and in only one of them was the defendant a bank, and the facts there involved are wholly different from those before us.

There is a marked difference between the obligations of a banking institution receiving funds and an individual. The latter does not ordinarily receive checks payable to his order from persons not indebted to him; he is not the custodian of funds in which he has no interest; nor is he a depositary for such members of the public as wish to avail themselves of his services. On the other hand, a bank is all of these. The public is invited to use its conveniences as places of deposit; it holds itself out as trustworthy for such purposes; when it is named as the payee in a check by a party not indebted to it, it will be presumed that it accepts the same subject to the directions of the drawer and not to the directions of a stranger to the paper who happens to present it.

But it is said that under the Negotiable Instruments Act the bank took the checks in good faith and for value, without notice of any infirmity in the instrument or defect in the title of the person negotiating it (Illinois Negotiable Instruments Act, sec. 52 [Cahill's St. ch. 98, ¶ 72]), and that therefore it is a holder in due course and will be protected. In *Drumm Const. Co. v. Forbes*, 305 Ill. 303, it was held that Forbes, the payee in the check, took it in due course and was protected from any infirmity in the title of Lamberton, who gave it to him, and that the plaintiff, who drew the check, could not recover from Forbes. But this case can be clearly distinguished

from the one at bar, in that Lamberton was indebted to Forbes, who took the check, which was drawn for the exact amount of this indebtedness, in discharge and payment of the same. It was a private transaction between individuals. Forbes was not in the banking business and did not receive funds for deposit.

The present Negotiable Instruments Act has not voided the requirement of good faith by the acceptor of commercial paper.

We hold that the weight of authority and reasoning support the position of plaintiffs and that the bank in neglecting to hold the proceeds of the checks subject to the directions of the plaintiffs and in permitting Tresidder, a third party, to withdraw the amount, was negligent and in law did not take the checks in good faith. The plaintiffs were entitled to recover the full amount as represented by the checks, with interest thereon at the rate of 5 per cent from May 2, 1923, the date when the association made the demand on the bank for the amount of the check which was refused.

The judgment is therefore reversed and judgment is entered against the defendant in this court for $2,652.18.

*Reversed and judgment here against
defendant for $2,652.18.*

MATCHETT and JOHNSTON, JJ., concur.