MAYO BROS. CHEMICAL CORPORATION *v.* CAPITAL NAT. BANK IN JACKSON.

(In Banc. Dec. 20, 1941.)

[5 So. (2d) 220. No. 34755.]

294

Jacobson, Snow & Covington, of Meridian, and **Butler & Snow**, of Jackson, for appellant.

Flowers, Brown & Hester, of Jackson, for appellee.

Argued orally by **C. B. Snow** and **Gabe Jacobson**, for appellant, and by **J. T. Brown**, for appellee.

**Alexander, J.,** delivered the opinion of the court.

Appellant sued the appellee on the ground that the latter ''negligently and without authority . . . paid the sum of $1,000 in cash,'' as the proceeds of appellant's check payable to the order of the drawee bank itself, to one Odom, the sales manager for the drawer. From a judgment denying recovery, this appeal is taken.

The appellant corporation was organized August 15, 1937. The following day it opened an account with the appellee bank with a deposit of $5,000. Its offices were in Meridian where Mayo, its president, resided, and its laboratory in Jackson. The bank is situated in the latter city, and one Odom was placed in charge of its business

there as sales manager. At the time the bank account was opened, Odom was introduced to the officers of the bank as such sales manager, and the bank was requested "to extend him every favor possible in taking care of the business." The bank was advised as to a resolution of the corporation to the effect that no funds could be withdrawn from the account except upon checks signed by Mayo, as its president, and Odom, as its sales manager. On August 17th Odom withdrew from the account the sum of $500 by a check of the corporation, payable to him. Two other checks. similarly drawn for smaller amounts were cashed by Odom prior to the transaction out of which this suit arose. On September 3rd, a check drawn upon and payable to the appellee in the sum of $1,000 was presented to the bank by Odom, who requested and was paid the cash thereon. The proceeds of this check were retained and used by Odom to the appellant's loss. On the day following this transaction, another check for $1,000 was drawn payable to Odom, and it was cashed. Thereafter nine other checks in varying amounts were similarly drawn and cashed by Odom. The business was short-lived and the account was closed October 12, 1937.

Testimony for appellant disclosed that Mayo had given instructions to Odom to use the particular check here involved for the purchase of New York exchange. There is no evidence that the bank knew of such instructions, and the bank complied with the request to cash the check. Although we consider such instructions irrelevant to affect any duty of the bank since they were not communicated to it, yet they are competent in resolving the issue as to the apparent authority of Odom in the transaction. Upon this issue the following additional facts are relevant since the trial court sitting, by consent, as trier of the law and facts without a jury, found that the bank was without negligence in following the instructions of Odom to pay the check in cash. Mayo gave two versions regarding his discovery of the conversion of the proceeds by Odom. The first was that he discovered the defalcation three days

after it occurred; the second, that it first came to his attention when he procured a duplicate copy of the corporation's monthly statement for the month of September. No complaint was made to the bank until the following April. The appellant owed the bank nothing at the time the check in question was presented, and there was no intimation to the bank as to the purpose for which the check was made to its order except such inferences as could be drawn from its prior dealings with Mayo and Odom, the request for its payment in cash, and the absence of any reasonable ground for inferring that it was to be otherwise handled.

It is the general rule that a drawee bank, at its own risk, pays to a third person the proceeds of a check payable to its own order. 9 C. J. S., Banks & Banking, sec. 340, p. 683. An agent of the drawer may be such third person if the bank has not been authorized to pay to him the check in cash. But of what is such payment a risk? Unquestionably it is the risk that such payment is contrary to the directions and wishes of the drawer. It is in this aspect that a bank is charged with a duty to use requisite care to this end, and with negligence in its failure so to do. The cognate inquiries at once arise: What directions were given the bank here, and from what were the wishes of the drawer to be inferred? The inferences available to the trial court are deducible from the circumstances hereinabove mentioned. In further considering whether, regardless of the failure to use the check to purchase exchange, such was in fact the purpose rather than its use as cash, the trial court had before it the following testimony of Mayo: This was the only check drawn to the order of the bank itself; the purpose for which witness desired New York exchange was to pay one Turner, a lawyer in a distant state whom witness did not know and whom he had not consulted, an attorney's fee the amount of which had not been discussed nor agreed upon; that such exchange could have been bought by witness himself in Meridian where he resided. It is in this connection

alone that the alleged purpose to purchase exchange is relevant, since, if the trial court should find (as it must have done) that such purpose was not proven, a willingness or desire that the check be used as cash would remain as the only reasonable alternative.

To the legal principle that a drawee bank pays such check to a third person at its risk, there is the corollary that the drawer, at its risk, clothes its agent with apparent authority to receive the proceeds in cash. Let us examine the situation with which the bank was faced when Odom presented the check for payment. Unless the bank invested the transaction with a logical purpose by viewing it as payable to cash, there were three alternatives open to it: (1) To refuse to accept the check at all—a course fraught with obvious embarrassment and possible resentment; (2) accept the check and retain the proceeds for the account of the drawer—a futile procedure executed by purely formal compensating debit and credit entries in drawer's account; or (3) holding the check in suspense without purpose or direction—thereby treating it as if it were not a check at all. If the bank had accepted the second and only alternative which could give to the instrument any efficacy as a check, it would again be confronted with the following trilemma: (1) Hold the proceeds aimlessly in anticipation of future directions; (2) inquire of drawer what was intended; (3) inquire of Odom who presented it, what its purpose was. The second alternative was alleged in the declaration to be the bank's duty. Pursuing these mazes farther into the labyrinth of incongruity, let it be assumed that the bank in answer to its inquiry had received definite instructions as to the disposition of the proceeds. Would it be sufficient, as appellant suggests, that Mayo, the appellant's president, would so direct the bank orally or in writing? If appellant's insistence upon a strict compliance with the literal import of the check is indulged, it would have had no right to dispose of its proceeds except upon a second check signed by Mayo and countersigned

by Odom. If we apply such a construction to its formal recitals, Odom would not have had authority to demand New York exchange thereon (as appellant contends Mayo directed him to do).

Appellant is at least consistent in its contention that if it had desired the cash, it should have procured or accompanied the check in question with another in the same amount payable either to Odom or to cash; yet, with this view, the suggestion that the check could have adequately indicated Mayo's purpose by a marginal memorandum of ''cash'' or ''New York Exchange'' (a device not infrequently employed) is out of harmony. Likewise inconsistent is the contention that the purchase and delivery to Odom of exchange in conformity with Mayo's alleged purpose would have been proper and permissible. When appellant's sole complaint is found to be that Odom did not procure exchange, there is an implied concession that such purchase could have been made without the cumbersome routine of a second check. The bank was itself the payee, and such exchange could be bought, strictly speaking, not with the check, but its proceeds, and there could be no proceeds until the bank had by its endorsement or an equivalent made such proceeds available.

We are thus again brought back to a situation where the bank would be holding proceeds pending directions for their disposition. Since all withdrawals in cash were by resolution of appellant and by directions to appellee, authorized only on checks signed by Mayo and countersigned by Odom, inquiry of and directions from Mayo alone would be equally as ineffective as directions from Odom alone. Neither was personally the drawer. These considerations are here advanced merely to reject them and to clarify, by their very confusion, the real issue here, that is, was the trial court as a trier of fact authorized to find that, under all the circumstances surrounding the opening of the account and the method of its handling, as well as the rather general practice through checks payable to Odom to supply him with the company's cash

for the payment of its bills, the declared status of Odom as its local manager, all interpreted in the light of a total absence of any duty or occasion to make any actual payment to the bank—the appellee was without negligence or breach of duty to appellant? We think so. The trial court was amply warranted in holding that the bank, at the request of appellant's local manager under the peculiar circumstances here presented, followed the only course that could give to the transaction any commercial purpose or could rescue it from absurdity.

The authorities cited by appellant are not disparaged, nor is the general principle, above recognized, discredited. On the contrary, we have sought to prove the rule by the exception.

Affirmed.