National Casualty Company, Appellant, v. Caswell and Company, Appellee.

Gen. No. 42,219.

Opinion filed December 21, 1942.

FRANK P. KRONENBERG, of Chicago, for appellant; WILLIAM P. SMITH, of Chicago, of counsel.

IRVIN K. RUSS, of Chicago, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff was surety on the bond of Franklin J. Kester as trustee, who improperly diverted trust funds to his individual use; plaintiff paid this loss of $1,456 and brought suit for this amount against the defendant charging that by its wrongful issuance of its check to Kester individually and not as trustee the defalcation was made possible and hence was liable to plaintiff. Upon trial before the court defendant moved to strike the complaint and to dismiss the suit, which motion was allowed and plaintiff appeals.

Franklin J. Kester was trustee of the Central & Northwest Corporation and had in his possession as

trustee a certificate of deposit; the defendant, which is in the investment securities business, purchased this certificate of deposit and issued its check in payment for $1,456, payable to the order of ''Franklin J. Kester''; Kester delivered the certificate of deposit to the defendant, having indorsed it as ''Trustee''; subsequently Kester appropriated to his own use the proceeds of this check and plaintiff, surety on his bond, made good the loss.

Defendant asserts that under the provisions of section 2 of the Fiduciary Obligations Act (Ill. Rev. Stat. 1941. ch. 98, par. 235 [Jones Ill. Stats. Ann. 135.07]) it cannot be held responsible for Kester's misappropriation of the money provided it acted in good faith, even if negligent, and the complaint fails to allege that defendant did not act in good faith. Section 2 of the act provides that ''A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary . . .'' Section 1 defines ''Good faith'' as ''A thing is done in good faith within the meaning of this act when it is in fact done honestly, whether it be done negligently or not.''

Defendant argues that it was not bound to inquire as to any breach of Kester's fiduciary obligations when it purchased the certificate of deposit from him, and did not become responsible for the proper application of the proceeds of the check. The complaint charges that making the check payable to ''Franklin J. Kester'' was a careless, negligent and wrongful act, but these words are not the equivalent of bad faith. Bad faith imports a dishonest purpose and implies wrongdoing through some motive of self-interest. *Spiegel v. Beacon Participations*, 297 Mass. 398, 416.

Plaintiff says that Kester was not only ''a fiduciary,'' as described in the statute, but was also a ''person'' with an individual status, and that when the check was made payable to him as a person it was not the

payment or transfer of money to "a fiduciary" as contemplated by the statute. This is a strained reading of the statute. Having in mind its true intent it means that when money is honestly paid to a person who is a trustee which as a fiduciary he is authorized to receive, the payer is not responsible for its application.

As noted in 4 Bogert on Trusts and Trustees, sec. 901, at common law under some circumstances a duty was imposed on one buying trust property from a trustee to see that the trustee applied the purchase price paid to trust purposes, but this rule has been abolished by statute in England and in most of our States, and under these statutes the purchaser from a trustee who has the power to sell need make no inquiry as to the use to which the trustee intends to put the money and may safely assume that it will be applied appropriately as trust property.

The cases of *All v. McComas* and *All v. Kloppel,* 162 Md. 690, are in point. There certain property was devised by will to Wattenscheidt as executor and trustee; defendant McComas purchased a drug business from the trust estate, making one of the checks given in payment payable to the order of "Wattenscheidt, attorney"; another payment was by a check to "Wattenscheidt" individually; he appropriated the money represented by these checks to his own use, and the successor-trustee of the estate sued the defendant McComas for the amount of these two checks claiming that he well knew that the drug business did not belong to Wattenscheidt individually but to him as executor and trustee of the estate. It was there argued, as here, that the legal effect of the issuance of the checks in the forms mentioned made the defendant a party to the breach of trust by Wattenscheidt as it made it easy for him to misappropriate the funds.

At the same time defendant Kloppel purchased certain ground rents from Wattenscheidt as trustee and paid for these with a check to the order of "C. R.

Wattenscheidt, Attorney''; the proceeds of this sale also were misappropriated by the trustee. The trial court sustained demurrers to the complaints, which on appeal was affirmed, the court (695) saying: ''If the appellees in these cases had paid the purchase money to Wattenscheidt in cash instead of by checks, it is not contended that any responsibility would have attached to the purchasers on account of the diversion of funds. . . . The checks were accepted and were good, so that the effect would have been the same if the purchasers had paid in cash instead of by check. . . . payment in cash or its equivalent is all that is required, unless there be some more specific charge of active participation in the transactions by the appellees.'' In answer to the argument of the plaintiff that because of the failure of defendants to make the checks payable to the executor and trustee they ''took the first step that ended in the spoliation of the trust,'' the court very aptly said: ''If the payee intended to appropriate the proceeds, as he surely did intend, payment to him in any form would have been the first step.'' The opinion cites section 2 of the Uniform Fiduciary Obligations Act and concludes that as no charge of bad faith on the part of the respective defendants was made, the demurrers were properly sustained. Other cases to the same effect are *Colby v. Riggs Nat. Bank,* 92 F. (2d) 183, *Davis v. Pennsylvania Co.,* 337 Pa. 456, and *New Amsterdam Casualty Co. v. National Newark & Essex Banking Co.,* 117 N. J. Eq. 264, aff'd 119 N. J. Eq. 540.

Cases cited by plaintiff were decided prior to the enactment of our Fiduciary Obligations Act and none of the facts appearing in any of these are like those now before us. For the most part the decisions were predicated upon actual knowledge of the misappropriation of funds by the fiduciary.

Pertinent to the underlying equities involved are certain expressions in the opinion in *New York Title &*

*Mortgage Co. v. First Nat. Bank,* 51 F. (2d) 485, where it was held that the remedy of subrogation is an equitable right which cannot be invoked in all cases without regard to circumstances but only in cases in which justice demands its application, and quoted from *American Surety Co. of New York v. Citizens' Nat. Bank of Roswell, N. M.,* 294 Fed. 609, 616: ''The right of subrogation is an equitable right, and where equities are equal the right does not exist and there can be no relief.'' In the case before us plaintiff was obligated under its surety bond to make good the defalcations of Kester. It did no more than it was obligated to do. Under such circumstances it could hardly be said that its equities were greater than those of the defendant, an innocent purchaser.

Plaintiff says that if defendant's check had been made payable to Kester ''as trustee'' plaintiff would have been protected, but this is not true. Under section 9 of the Fiduciary Obligations Act the check to Kester as trustee could have been indorsed by him as trustee and deposited in his personal account and the depositary bank would not be bound to inquire whether Kester was breaching his fiduciary obligation in so doing. This section of the statute authorizes the bank under such circumstances to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable unless the bank has actual knowledge that the fiduciary in so doing is committing a breach of his obligation. This would also be true under the provisions of sections 4 and 9 if the check had been made to Kester's principal, the Central & Northwest Corporation, for he could have indorsed the check in the name of his principal and deposited it in his personal account.

There is no merit in the suggestion by plaintiff that defendant is liable because it knew that Kester was holding the certificate of deposit as trustee. The whole

purpose of the Fiduciary Obligations Act is to cover situations which arise when one person honestly deals with another knowing him to be a trustee.

In Scott on Trusts, vol 2., sec. 297.6, it is said that one is not chargeable with notice of a breach of trust unless he has actual knowledge of the breach or knowledge of such fact as amounts to bad faith in purchasing the property from the trustee. The author says ''It would seem that the mere fact that the transferee is negligent in failing to learn of the breach of trust is not enough to charge him with notice unless he acts in bad faith.'' The complaint does not allege any knowledge or facts showing bad faith by the defendant in purchasing the certificate of deposit.

Counsel for the defendant properly says that if plaintiff's theory were followed to its ultimate conclusion no person could deal with a trustee except at his own peril. The enactment of the Fiduciary Obligations Act was to maintain the value of a trust and to protect those who innocently and in good faith deal with trustees. As was said in *Colby v. Riggs Nat. Bank,* 92 F. (2d) 183, 198, the act ''relaxes some of the harsher rules which require of a bank and of individuals the highest degree of vigilance in the detection of a fiduciary's wrongdoing.''

The trial court properly struck the complaint and the judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.