## FEDERAL SAVINGS & LOAN INS. CORPORATION v. FIRST NAT. BANK, LIBERTY, MO.
### No. 1755.

District Court, W. D. Missouri, W. D.
July 25, 1946.

See, also, 4 F.R.D. 313.

Ray E. Dougherty, of Washington, D. C., and Charles M. Miller, of Kansas City, Mo., for plaintiff.

Francis G. Hale of Liberty, Mo., and Wm. S. Hogsett, of Hogsett, Trippe, Depping & Houts, all of Kansas City, Mo., for defendant.

REEVES, District Judge.

This is an action for money had and received. Plaintiff is the assignee of Liberty Federal Savings and Loan Association of Liberty, Missouri. The suit is in twenty-four counts and each count involves practically the same facts save as to the amount.

The defendant was a depositary of the said Liberty Federal Savings and Loan Association, hereinafter called the Association, and the suit is for the amount named in each of 24 checks issued by the Association and made payable in each instance to the defendant. The several transactions extended over a period of years.

The defense interposed is substantially that the checks were issued by said Association in due and regular course of business, and, though made payable to defendant, yet each was paid and the proceeds applied as directed by authorized officers and agents of the Association and that in each instance either immediately or ultimately, the payment discharged an equal liability of the Association created by specific act of the board of directors of the Association or by the necessary liabilities that inhere and accrue in regular routine operation of the Association.

The facts are undisputed. One Harold Wilson was, at all the times mentioned in the pleading and the evidence, the president and general manager of the Association. He bore a good reputation for honesty and fair dealing and had the confidence of the board of directors of the Association and was invested by said board with plenary powers and the defendant was so advised. However, the said Wilson was secretly faithless to his trust and by means of excessive appraisals and the fraudulent release of valid mortgages, he, over a period of years, defrauded the Association of much more than $100,000.

Aileen Chrisman was, at the same time, secretary and treasurer of the Association and all the aforementioned checks were signed either by the said Wilson or by her, that is, by them as president-manager or as the secretary-treasurer.

The plaintiff contends that if due and reasonable inquiry had been made by the defendant the fraud of Wilson would, to a large extent, have been averted or minimized, and that the fact that said checks were made payable to defendant put it on notice.

Additional facts as they may become pertinent will be stated in the course of this memorandum opinion.

1. At the outset plaintiff proffers a procedural objection that, upon a suit for money had and received, or assumpsit, the defense is greatly limited and the defendant can neither properly plead nor prove that no loss was actually sustained in the transactions. This objection is untenable.

The action is one that involves equitable principles and the defendant may interpose any defense that shows the plaintiff in equity and good conscience not entitled to recover. Myers v. Hurley Motor Co., 273 U.S. 18, loc. cit. 24, 47 S.Ct. 277, 71 L.Ed. 515, 50 A.L.R. 1181; Stone v. White, 301 U.S. 532, loc. cit. 535, 57 S.Ct. 851, 81 L.Ed. 1265; Henderson v. Koenig, 192 Mo. 690, 91 S.W. 88; Bradley Lumber Co. v. Bradley County Bank, 8 Cir., 206 F. 41, loc. cit. 45.

2. The first logical inquiry relates to the proper course of the defendant when the checks payable to it were presented:

And, first, was this such an unusual circumstance as to provoke or justify an inquiry? The evidence showed that literally scores of checks were similarly drawn and paid by defendant over a period of years,

210

concurrently with as well as antedating the several checks sued on.

And, second, the applications of the proceeds of the checks were made under the immediate notice and observation of the defendant and were apparently properly applied.

And, third, the defendant had regularly furnished the plaintiff's assignor with statements of its account with the paid checks as vouchers. This was done monthly, and no complaints had ever been made.

And, fourth, the Association had been annually examined by federal authorities and no fault had been found with such a method of doing business.

And, fifth, the said Wilson not only bore a good business reputation but was clothed by the board of directors of the Association with plenary powers, and, such being true the question arises,—In what way could the officers of the defendant have questioned the method?

■ Both the courts and text-writers have accorded a logical legal status to checks made payable to drawee banks. In legal effect it is the same as if payable to bearer or to cash and necessarily involves an intended change in the status of the fund. Mayo Bros. Chemical Corporation v. Capital National Bank, 192 Miss. 293, 5 So.2d 220, 138 A.L.R. 849, loc. cit. 852. And the application of the proceeds of each check under the immediate observation and supervision of the defendant surely would not form the basis for or compel an inquiry. Moreover, the defendant had submitted monthly statements to the Association, and, even though these came solely into the hands of the dishonest Wilson, yet his knowledge, under all the authorities, became the knowledge of the Association's board of directors and it was the duty of the Association promptly to challenge the method. England National Bank v. United States, 8 Cir., 282 F. 121, 125, loc. cit. 126, 127; Leather Manufacturers' Bank v. Morgan, 117 U.S. 96, loc. cit. 107, 108, 6 S.Ct. 657, 29 L.Ed. 811; Reynolds v. Third National Bank, Mo.Sup., 225 S.W. 901, loc. cit. 903, 904.

In Mattison–Greenlee Service Corporation v. Culhane, D.C., 20 F.Supp. 882, 886, cited by the plaintiff, the District Court expressed the rule when it said the depositor "is charged with knowledge of such facts as a reasonable examination by an honest agent would disclose." The evidence showed that the files of the Association were replete with information that checks were drawn in this way.

■ In addition to this, the numerous examinations made by the national authorities were a reassurance to the defendant as its records were, or should have been, checked repeatedly with respect to these identical disbursements. Officers of the defendant had a right to indulge the presumption of honesty, fair dealing, and good faith on the part of the said Wilson and nothing transpired to weaken or impair that faith as the transactions were according to an established custom and the disbursements were apparently logical. Their confidence in Wilson was reinforced by the failure of the Association or the federal authorities to challenge or question the manner of doing business. The foregoing fully differentiates this case from Federal Savings & Loan Ins. Corp. v. Kearney Trust Co., 8 Cir., 151 F.2d 720.

■■ 3. The officers of the defendant dealt with a man who was invested with the greatest authority as executive head of the Association and as its general manager. They had been formally advised of this fact by the Association's board of directors. Under such circumstances there was scarcely an opportunity to interrupt the transaction of business and delay apparently important matters while an inquiry was being made. And, realistically and practically, to whom could the inquiry have been properly addressed? Moreover, the doctrine of presumptive or imputed notice is a harsh doctrine and is only resorted to out of necessity and then with reluctance. Generally its application results from bad faith, fraud or gross negligence on the part of the one charged, and only then invoked because it would be unconscionable to permit the defendant to assert that he had no knowledge. 46 C.J. Sections 29, 30, 33, p. 545, 546; United States v. Shelby Iron Co., 273 U.S. 571, 47 S.Ct. 515, 71 L.Ed. 781. The defendant was guilty of neither bad faith,

fraud, nor gross negligence. A duty to inquire depends upon circumstances. 36 Words and Phrases, Perm.Ed., p. 353, on "Reasonable Inquiry;" Slack v. Kansas City Gas Co., 233 Mo.App. 306, 120 S.W.2d 70, loc. cit. 72; Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485. And the circumstances of this case did not warrant inquiry.

■ 4. The evidence was conclusive that in each case the check discharged an equal liability of the Association either created by the specific act of the board of directors of the Association or by the basic or fundamental law of the Association.

In most instances the board of directors had approved loans which inevitably required cash disbursement. If fraud inhered in such loans, the responsibility rested upon the Association's board and not on the defendant. The disbursements in such cases were ultimately, if not immediately, applied precisely as authorized by the Association's board of directors.

■ In other cases the checks were given to satisfy the obligation of the Association to redeem its savings pledges or shares. In the regular course of business, under its charter and laws, it was bound to loan upon or redeem its savings shares at the instance and election of its subscribers or members. Savings shares, when issued, became and were outstanding obligations. No action of the board of directors was necessary to effect loans upon or the redemption of savings shares. In such cases the Association was duly credited with the disbursements which discharged liabilities in the amount of the checks so issued. The association lost nothing on these transactions.

■ 5. The evidence of the plaintiff showed that losses sustained by the Association were effected by its president and general manager in securing fraudulent appraisals of real estate upon which loans were authorized by its board of directors, and also by dishonestly and fraudulently satisfying the records of unpaid mortgages. These dishonest and fraudulent acts were remote from and were in no way influenced by any act or acts of the defendant.

■ 6. As stated, the Association's board of directors granted plenary powers to its faithless president and general manager and advised the defendant of the fact. It invited confidence and trust in an officer whose conduct it became the duty of the board to supervise and check. The by-laws of the Association imposed upon its board of directors the duty to direct its operations and in clear language directed that the board "shall have complete responsibility for the management of the Association."

Through the manipulations of the board's chosen executive, the Association sustained staggering losses, and the plaintiff, as assignee of the Association, now seeks to recoup a portion of such losses from the defendant which performed no act within the immediate sphere of the fraudulent operations. The Association's president and board of directors occupied this sphere while the defendant acted only on the periphery of the field of fraud and in no instance either carelessly or otherwise aided or facilitated the perpetration of the wrongs inflicted upon the Association.

It is admitted by the plaintiff that many counts of the complaint should be dismissed or recovery denied, and, in view of the foregoing discussion, recovery should be denied on all the other counts. It will be so ordered.