**NATIONAL CASH REGISTER CO.,**
Plaintiff-Appellant,

v.

**UNARCO INDUSTRIES, INC.,**
Defendant-Appellee.

No. 72–1029.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1973.

Decided Jan. 3, 1974.

John L. Conlon, Chicago, Ill., for plaintiff-appellant.

Otis H. Halleen, Jonathan H. Sherr, Chicago, Ill., for defendant-appellee.

Before KILEY, FAIRCHILD and PELL, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiff appeals from a judgment dismissing its complaint.

Plaintiff, the owner, contracted with Shook for the construction of a distribution center building for plaintiff. The contract called for installation of 23 ten-foot "dockboards" (mechanical loading platforms). Subsequently, plaintiff decided that only longer, 12 foot dockboards, not a standard size, could fulfill plaintiff's needs. Accordingly, Shook and plaintiff agreed that plaintiff would find a manufacturer that would provide the 12 foot dockboards and would pay the additional cost.

Plaintiff located defendant as a seller of dockboards, and Shook, at plaintiff's direction, made an agreement with defendant whereby defendant agreed to construct the 12 foot dockboards for $25,645. Although the parties to this contract were Shook and defendant, plaintiff played a part in its formation, as well as its later termination. Defendant did not produce the dockboards. After it became clear that defendant would not perform, defendant and Shook discussed the problem and it was agreed that the contract with defendant should be canceled.

Shook's vice president sent defendant a letter stating, in part, "we are cancelling without charge and making arrangements to procure elsewhere." Plaintiff later purchased the dockboards from another manufacturer at a cost $17,394 in excess of the amount specified in the contract between Shook and defendant. Plaintiff seeks to recover this sum from defendant.

Jurisdiction is founded on diversity. Both parties apparently accept Illinois law as controlling. Each party moved for summary judgment. The district court concluded that plaintiff has shown no right to recover for breach of the contract between Shook and defendant. Plaintiff appeals from the judgment entered accordingly.

1. *Plaintiff's standing to sue.*

■ Generally, one who is not a party to a contract may not recover for its breach. See, *e. g.*, Vanderlaan v. Berry Construction Company, 119 Ill.App.2d 142, 255 N.E.2d 615 (1970). Plaintiff contends that it is a third-party beneficiary of the contract between Shook and defendant and therefore entitled to sue. Although the work performed by subcontractors ultimately accrues to the property owner, the owner is ordinarily regarded as only an incidental beneficiary of the subcontract. 1 Restatement of Contracts § 147, Illustration 1; Restatement of Contracts 2d § 133, Illustration 18 (Tent. Draft No. 3, 1967); Kircher v. Hunter, 101 Cal.App. 548, 281 P. 1047 (1929); Cox v. Curnutt, 271 P. 2d 342 (Okl., 1954). Possibly plaintiff's direct involvement in the selection of defendant for the particular work, and in the formation of the contract, would call for application of a different principle here, but because subrogation is available, the question need not be answered.

Plaintiff also asserts it can maintain this action as a subrogee of Shook's claim against defendant for breach of contract.

■ Illinois recognizes the doctrine of subrogation as a broad, flexible tool for the accomplishment of justice. "This legal concept originated in equity, but is presently an integral part of the common law, and is designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay. Under this doctrine, a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another, will be subrogated to the rights of the injured person against such wrongdoer." Geneva Construction Co. v. Martin Transfer & Stor. Co., 4 Ill.2d 273, 122 N.E.2d 540, 546 (1954); Dworak v. Tempel, 17 Ill.2d 181, 161 N.E.2d 258, 263 (1959); In re Federal Facilities Realty Trust, 220 F. 2d 495, 503 (7th Cir., 1955).

■ Plaintiff needed the peculiar sized dockboards, and obligated itself to Shook to find a source and pay the added cost. Shook was obligated to complete the building. Plaintiff had found defendant and, at plaintiff's request, de-

fendant agreed with Shook to produce at an agreed price. Defendant's breach of its contract with Shook compelled plaintiff to find a new source and pay an even higher price. Recognizing that there may be circumstances peculiar to this case which would justify reliance on a third party beneficiary, or even an agency, theory, it seems clear that in any event equity requires that defendant should bear the burden of the increased price which plaintiff was compelled to pay. We conclude that plaintiff is a subrogee of Shook's cause of action for breach of contract, and that it was error to dismiss plaintiff's case on the ground plaintiff lacked standing.

■ We conclude, contrary to one of defendant's contentions, that the affidavit of plaintiff's assistant director of distribution, sufficiently shows that plaintiff in fact paid the higher price for the dockboards ultimately secured. It has been held that, under a cost-plus contract, the extra expenses resulting from a subcontractor's breach fall on the owner rather than the general contractor. Hegeman-Harris Co. v. Tebbetts & Garland Co., 262 Ill.App. 524 (1st Dist., 1931). The agreement between plaintiff and Shook with respect to these dockboards is similar.

2. *Defense that damage claim was waived or renounced.*

■ One of the defenses alleged in the answer was that Shook waived and renounced any claim it might have had against defendant. Defendant relied on the "without charge" language in "we are cancelling without charge and making arrangements to procure elsewhere" in the letter already referred to.

Plaintiff argues (and the affidavit of the author of the letter asserts) that "without charge" meant only that Shook would not accede to any charge by defendant for engineering costs in its abortive attempts to produce the dockboards. Plaintiff argues further that at best for defendant the "without charge" phrase is ambiguous, and, as a matter of law, is not the necessary clear expression of intent to waive or renounce.

U.C.C. § 1–107 (S.H.A. ch. 26, § 1–107) provides that a claim arising out of a breach of contract can be discharged "by a written waiver or renunciation signed and delivered by the aggrieved party." This provision is subject to U.C.C. § 2–720 which states:

"Unless the contrary intention clearly appears, expressions of 'cancellation' or 'rescission' of the contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach."

U.C.C. § 1–205, requires consideration both of any course of dealing between the parties and any applicable usage of trade in interpreting expressions and agreements. The meaning of a commercial agreement of the parties "is to be determined by the language used by them and by their action, read and interpreted in the light of commercial practices and other surrounding circumstances." U.C.C. § 1–205, Comment 1. A similar rule has long prevailed in Illinois. Sterling-Midland Coal Co. v. Great Lakes Coal & C. Co., 334 Ill. 281, 165 N.E. 793, 796 (1929). See also Construction Aggregates Corp. v. Hewitt-Robins Inc., 404 F.2d 505, 509 (7th Cir., 1968), cert. denied, 395 U.S. 921, 89 S.Ct. 1774, 23 L.Ed.2d 238.

Plaintiff is surely correct in saying that in order for the language to be found a waiver or renunciation, such intention must clearly appear. The present record, however, does not permit that determination to be made as a matter of law.

The clerk of this court is directed to enter judgment reversing the judgment appealed from and remanding the cause for further proceedings.

PELL, Circuit Judge (dissenting).

Being of the opinion that the judgment entered by the district court should be affirmed, I respectfully dissent. The majority of the panel has reversed the judgment of the district court

on a subrogation theory, a basis barely adverted to in the court below.

When the district court had the motions for summary judgment under consideration, the plaintiff filed a 19 page brief which for the most part was devoted to an effort to show that the "without charge" phrase in the Shook letter meant that Shook was saying it would not expect to pay Unarco anything even though Shook was formally terminating the contract. Another interpretation is that Shook was stating that it was waiving any right that it might have had to seek reimbursement from Unarco.

On the last page of the brief, the plaintiff in an ambivalent wind-up stated, "[f]urthermore, the increased cost of the dockboards caused by Unarco's breach was paid for by NCR. Under such circumstances NCR may be regarded as either a proper assignee or subrogee to maintain the action. [Citation of three federal district court cases from other states omitted.]"

The district court in its order granting summary judgment was equally cursory in its attention to the subrogation aspect of the case:

"The plaintiff in its briefs seeks to recover from defendant upon the theory that it was a third party beneficiary of a contract between defendant and Charles H. Shook, Inc., and the real party in interest and therefore entitled to bring this action against the defendant, yet nowhere does the plaintiff allege in its complaint that it was the assignee, subrogee or direct third party beneficiary. Plaintiff was at most an incidental beneficiary of the contract between defendant and Charles H. Shook, Inc., and therefore is not entitled to bring this action."

Even if it is conceded that it is the facts adducible from the pleadings and the affidavits rather than the theory proclaimed in the complaint which is determinative on the summary judgment question, nevertheless, the foregoing illustrates that we are venturing into an area for decisional purposes which was not deemed of great moment in the trial court.

On that basis of exploration it appears to me that the record contains other support for the correctness of the district court's opinion. Before discussing that, however, I must observe that I cannot disagree with the basis on which the district court did rest its decision. While the privity concept is certainly not the stout fellow of yesteryear, it is not devoid of vitality. The plaintiff chose its route of dealing only with Shook, yet now it is willing to leap over that arrangement which would have been a barrier to the defendant proceeding against it. Vanderlaan v. Berry Construction Company, 119 Ill.App.2d 142, 255 N.E.2d 615 (1970). I am not aware of any case under the controlling law of Illinois which squarely holds that in the owner-contractor-subcontractor syndrome the privity necessity can be dispensed with through the guise of an overriding subrogation theory.

Assuming arguendo that the Illinois courts might find the subrogation route open in this particular factual context, I would not find that the plaintiff has demonstrated appropriate credentials for the utilization of the subrogation theory as a basis for recovery.

While the subrogation concept, as the majority states, has been referred to as an integral part of the common law, case law also has declared it not to be a doctrine of common law but one which originated in equity and is a creature of equity. It is designed to promote and to accomplish justice. See, e. g., People v. Metropolitan Casualty Ins. Co., 339 Ill. App. 514, 90 N.E.2d 565 (1st Dist. 1950). The maxims of equity would certainly be applicable to prevent the use of subrogation to accomplish an injustice. The right of subrogation is an equitable right, and where equities are equal the right does not exist. It cannot be utilized without regard to the circumstances but only in cases in which justice demands its application. National Casualty Co. v. Caswell & Co., 317 Ill. App. 66, 45 N.E.2d 698 (1942).

It appears to me that the demand just does not exist here. While the defendant at the time of performance was not responsive to inquiries, it is clear that the projected work was of a nonstandard type which the defendant was having difficulty accomplishing. There is no indication that the price actually paid to the subsequent subcontractor was less than a fair and reasonable amount for the product involved.

However, even if, *arguendo*, equity would hold a party to its bargain fairly made even though the execution of that contract would have adverse financial impact the conduct of the defendant in my opinion precludes its resort to the equitable doctrine of subrogation.

I rest this conclusion on two aspects of the present case: first, the intervening shield of the general contractor which the plaintiff could have utilized if the defendant were claiming against the plaintiff creates an unequal and an unfair situation; and, second, Shook, in its letter, by stating that it was "cancelling without charge and making arrangements to procure [dockboards] elsewhere," even if the statement is ambiguous insofar as "without charge" is concerned, created a reasonable basis for belief on the part of the defendant that it was being relieved of an onerous contract without any liability for failure of performance.

The first aspect needs little elaboration. The plaintiff chose to deal with a general contractor and not to expose itself to direct claims from subcontractors. It now seeks to reverse directions on the one way street it selected. To do so would appear to me to be violative of equitable principles.

As to the second aspect, the president and one other employee of the defendant acted upon the Shook letter pursuant to a not unreasonable interpretation that the contract was at an end and that Unarco would not be charged for any costs incurred by Shook. Accordingly, Unarco terminated its efforts to perform under the contract.

The plaintiff concedes that the "without charge" statement is ambiguous. By so conceding, it is also admitting that the interpretation placed on the words by Unarco is not unreasonable. Whether this would be the ultimate legal effect of the words in a breach of contract suit by the other contracting party, Shook, is not important here, for what we are considering is whether a nonparty who is suing is precluded by equitable principles from using the subrogation doctrine. Nor, in my opinion, can NCR improve its position by the fact that it was Shook and not NCR which wrote the letter. In other words, NCR, by its direction to terminate the contract which Shook executed, was placing Unarco in a position in which it reasonably thought that it had lost its contract but would be subject to no liability. Justice is not achieved by now permitting the plaintiff to say that "you were mistaken in your reliance."

Whether the payment made by NCR was or was not voluntary is arguable and standing by itself might well not be sufficient to defeat subrogation. However, equity considers all of the circumstances, and the somewhat questionable nature of the additional payment by NCR insofar as whether it was voluntary or whether it was required by the NCR-Shook contract therefore includes this element in the overall picture even though the impact may be minimal. Finally, it is noted in relation to the difficulty of performance that the ultimate delivering subcontractor did provide dockboards with a different design.

Considering all of these aspects, I would hold that the district court's decision was correct and that the plaintiff was precluded from a recovery based upon subrogation.

Plaintiff is not averse to recovery on any basis which it can get the court to accept and also relies upon a third party beneficiary claim, upon an assignment theory, and upon some type of agency relationship with Shook. I find nothing in the record before the district court to make NCR other than the ordinary inci-

dental beneficiary of any contracts that its general contractor may have made with subcontractors.

For the reasons indicated herein, I would affirm the judgment of the district court.