ST. STEPHEN'S EVANGELICAL LUTHERAN CHURCH, Plaintiff-Appellee, *v.* SEAWAY NATIONAL BANK *et al.*, Defendant-Appellant.

First District (1st Division)   No. 60790

Opinion filed May 24, 1976.

GOLDBERG, P. J., specially concurring.

Julian B. Wilkins and Michael Rovell, both of Chicago, for appellant.

Edward D. Lapperre and Vincent P. Reilly, both of Chicago, for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

Plaintiff, St. Stephen's Evangelical Lutheran Church, maintained its checking account in the defendant, Seaway National Bank of Chicago. The only signator on the account was the church's treasurer, Louis E. Ferguson. Between April 29, 1968, and January 15, 1969, he drew 32 checks on the account all payable to the defendant bank. The church admitted that except for four checks applied in payment of a loan from the bank to the church, the bank cashed each check and gave Ferguson the proceeds. The church claimed Ferguson failed to account to it for the proceeds. After a trial without a jury, judgment was entered in favor of the church and against the bank in the amount of $7,975.94 and the bank appeals.

Ferguson was in charge of the church's books, records and checking account. The complaint charged him with conversion; he answered but did not appear at the trial either in person or by counsel.

The allegations of the complaint relating to the bank were that the funds in question were converted to Ferguson's use through the bank's negligence in cashing the checks and turning the proceeds over to him. But the church contended in the lower court, as it does here, that irrespective of negligence, the bank was guilty of conversion in cashing the checks. The bank's position is that it was not guilty of either negligence or conversion, and that since Ferguson was a fiduciary of the church authorized to receive the proceeds of the checks, the bank is protected by the Uniform Fiduciaries Act (hereinafter referred to as the

Act) (Ill. Rev. Stat. 1967, ch. 98, par. 234 *et seq.*). The bank further argues that the church's failure to reconcile its bank statements delayed the time the church was put on notice of Ferguson's defalcations and that this was contributory negligence. Finally, the bank asserts the church failed to prove that Ferguson did not use the proceeds of the checks for church purposes, and, therefore, to prove that it suffered any damage.

The threshold issue is whether the bank incurred liability to the church in cashing the checks. We look to the bank resolution executed by the church and sections 2 and 8 of the Act (Ill. Rev. Stat. 1967, ch. 98, pars. 235 and 241) for the answer. The bank resolution authorized the officers, agents and employees of the church to indorse for deposit or negotiation checks belonging to or coming into the possession of the church and Ferguson alone, to sign "checks * * * including orders or directions in informal or letter form" against funds standing to the credit of the church. It also authorized the bank to honor checks drawn to Ferguson's individual order without further inquiry or regard to his authority or the use of the proceeds of such checks. Sections 2 and 8 of the Act provide:

> Section 2. "A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary; * * *."
>
> Section 8. "If a check is drawn upon the account of his principal in a bank by a fiduciary who is empowered to draw checks upon his principal's account, the bank is authorized to pay such check without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing such check, or with knowledge of such facts that its action in paying the check amounts to bad faith. If, however, such a check is payable to the drawee bank and is delivered to it in payment of or as security for a personal debt of the fiduciary to it, the bank is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the check."

Ferguson was empowered to draw checks on the church's account within the meaning of section 8. There is neither allegation nor proof that the defendant in paying the checks had knowledge that Ferguson was committing a breach of his fiduciary obligation or that its action in paying the checks amounted to bad faith. Plaintiff's counsel, in oral argument in the circuit court, conceded that, "We are not trying to prove bad faith on the part of the Seaway National Bank."

The reference in the second sentence of section 8 of the Act to checks drawn by a fiduciary on his principal's account and payable to the drawee bank indicates that the protection afforded a bank by the first sentence of

that section extends to checks drawn in that manner. Where a check payable to the drawee bank is not delivered to the bank in payment of a personal debt of a fiduciary, section 8 protects the bank against liability to the principal for paying the check absent knowledge that the fiduciary is breaching his obligation in drawing the check or bad faith on the part of the bank. The checks on which the church seek recovery were payable to the bank, but there is no contention by the church that any of them were applied to any indebtedness Ferguson had to the bank or that he even was indebted to the bank.

Section 2 of the Act provides the bank with additional protection if Ferguson was authorized to receive the funds the bank paid him. The plaintiff argues that because the checks were payable to the bank and not to Ferguson or to cash, Ferguson was not entitled to receive their proceeds. However, Ferguson's authority to receive funds out of the church's account is supplied by the bank resolution which designates him as the only signator on the account and permits him to draw checks, drafts and orders to his individual order without need for further inquiry by the bank or question as to the use of the proceeds of such withdrawals. The broad power to withdraw funds which the church granted to Ferguson as well as his right under the resolution to give the bank orders or directions in informal or letter form was the authority for Ferguson to receive the proceeds of checks he drew payable to the bank. When Ferguson presented the checks signed by him, the logical response for the bank was to inquire of the depositor what disposition it wished made of them since without further direction checks payable to the drawee bank would have no commercial meaning. (*Mayo Bros. Chemical Corp. v. Capital National Bank* (1941), 192 Miss. 293, 5 So.2d 220.) As the only person named by the church to make withdrawals from the account or give directions to the bank, Ferguson was the proper person for the bank to look to for instructions. Thus, the payment by the bank was to a fiduciary authorized to receive funds from the account, and section 2 of the Act protects the bank against Ferguson's misapplication of the proceeds of the checks. Sections 2 and 8 of the Act are, therefore, a defense against the church's claim.

■■ The conclusion we reach draws support from the holdings in *Maryland Casualty Co. v. Bank of Charlotte* (4th Cir. 1965), 340 F.2d 550; *Johnson v. Citizen's National Bank* (4th Dist. 1975), 30 Ill. App. 3d 1066, 334 N.E.2d 295; and *Sugarhouse Finance Co. v. Zions First National Bank* (1968), 21 Utah 2d 68, 440 P.2d 869. In all three cases, a corporate signator drew drafts or checks on corporate funds in one bank payable to another bank. In *Johnson,* the payee bank had no relationship with the corporation on whose funds the checks were drawn. In both *Johnson* and *Sugarhouse Finance,* the checks, at the request of the fiduciary, were

deposited by the payee bank in a personal account maintained by the fiduciary in that bank, and he was then permitted to withdraw funds from that account. In *Sugarhouse Finance*, the checks were not indorsed prior to their deposit. In *Maryland Casualty*, the check in question was cashed by the payee bank at the oral request of the fiduciary and the proceeds were paid to her. In all three cases the payee bank was protected by the Act against liability to the principal. The court stated in *Johnson*:

> "The purpose of the Act is to cover situations which arise when one person honestly deals with another knowing him to be a fiduciary. The Act ' "relaxes some of the harsher rules which require of a bank * * * the highest degree of vigilance in the detection of a fiduciary's wrongdoing." ' *National Casualty Co. v. Caswell & Co.*, 317 Ill. App. 66, 72, 45 N.E.2d 698, 701." 30 Ill. App. 3d 1066, 1069-70.

■■ *Sugarhouse Finance* held that under the Act it was neither necessary for the payee bank to require a demonstration of the fiduciary's authority to make the deposit or to require an indorsement on a check made payable to itself. In *Johnson*, as well as in *Sugarhouse Finance*, the view was expressed that the Act placed upon the principal the responsibility to employ fiduciaries who are trustworthy.

The court in *Maryland Casualty* concluded that the payee bank was not liable for cashing the first check presented by the fiduciary, but held the bank liable for subsequent checks drawn in the same manner after one of the checks was used by the bank to reduce the fiduciary's personal indebtedness to it. As pointed out above, none of the checks in the case before us were used by Ferguson as payment on any indebtedness he owed the defendant bank. Thus, there was nothing in his dealing with the defendant to put it on notice of his misconduct or to charge the bank with bad faith as there was in *Maryland Casualty*. The court in *Maryland Casualty* after noting, as the court did in *Sugarhouse Finance*, that the Act did away with the bank's liability for negligence, stated:

> "* * * [W]e hold that it [the payee bank] is not liable for cashing the first check in the series and paying the proceeds, amounting to $2,100.00, to Miss Ewing. The mere fact that the Bank was designated as payee was not enough to attribute to it either 'actual knowledge' or 'bad faith.' " 340 F.2d 550, 555.

There is no difference in substance between a payee bank crediting a check to the fiduciary's personal account and then permitting the fiduciary to draw on that account, the procedure followed in *Johnson* and *Sugarhouse Finance*, and paying the proceeds of the check in cash to the fiduciary as in *Maryland Casualty* and in this case. The defendant's position here is stronger than in *Johnson* for there is more reason for a payee bank which is not the drawee bank and which has no relationship

with the principal, as in *Johnson,* to question the purpose of such a transaction than in the case of a check payable to the drawee bank. (See *People ex rel. Nelson v. People's Bank & Trust Co.* (2d Dist. 1933), 271 Ill. App. 41; *Milano v. Sheridan Trust & Savings Bank* (1st Dist. 1926), 242 Ill. App. 362.) The defendant bank knew that Ferguson was the signator on the church's account and had authority to withdraw funds from it, while in *Johnson* the payee bank because of the absence of any relationship with the principal did not have knowledge of the fiduciary's authority or the reason why the checks in question were made payable to it. We agree with the expression in *Johnson* that the adoption of the Act in Illinois in 1931 changed the law established in *Milano* and in *People ex rel. Nelson v. People's Loan & Trust Co.* (2d Dist. 1936), 285 Ill. App. 552, which dealt with events prior to the adoption of the Act, on both of which the church relies, as well as in *People's Bank & Trust Co.*

The church also relies on *Pacific Indemnity Co. v. Security National Bank* (1967), 248 Cal. App. 2d 75, 56 Cal. Rptr. 142, and *Mesquite State Bank v. Professional Investment Corp.* (Tex. 1973), 488 S.W.2d 73. Neither Texas nor California has adopted the Act. In addition, in *Mesquite* there was no proof that the bank had paid the proceeds of the checks to the fiduciary or anyone else.

The court in *Main Belting Co. v. Corn Exchange National Bank & Trust Co.* (1937), 325 Pa. 168, 188 A. 865, another authority on which the church relies, had before it a resolution different in form from the one the church gave the defendant bank, and the principal element of that decision was failure to comply with the bank resolution. Without interpreting the Act, the court held that when a bank with the limited authority granted by the resolution there treats a check payable to itself as a bearer instrument, it takes the risk. Because of the interpretation we give the Act and the differences in the bank resolutions, that case is not controlling.

The exculpation that the Act affords may encourage banking practices lending themselves to the possibility of commercial fraud without detection. Perhaps this is an appropriate time for States which have adopted the Act to determine whether in an era of increasing white-collar crime more stringent requirements are in order for banks dealing with fiduciaries particularly in the handling of checks payable to a bank. Such changes would probably not radically alter procedures existing in most banks because effectively administered banks to forestall fraud are likely already to be following the practice of scrutinizing checks payable to them with greater care than the payee banks did in *Johnson, Sugarhouse Finance, Maryland Casualty* or this case.

■■ Because the Act absolves the bank of liability to the church, it is unnecessary to consider the other contentions advanced by the defendant.

For the reasons stated above, the judgment is reversed and the cause is remanded with directions to the circuit court to enter judgment in favor of the defendant, Seaway National Bank of Chicago, and against the plaintiff.

Reversed and remanded with directions.

BURKE, J., concurs.

Mr. PRESIDING JUSTICE GOLDBERG, specially concurring:

I agree with the result reached in the above opinion although I do not agree with all of the language used, particularly with reference to possible changes in banking practices. In addition, that result is mandated by *Johnson v. Citizen's National Bank* (1975), 30 Ill. App. 3d 1066, 334 N.E.2d 295, *leave to appeal denied*, 61 Ill. 2d 598.